UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOANNE PARTIN,                                    Case No. 1:14-cv-216
            Plaintiff,                            Dlott, J.
                                                  Litkovitz, M.J.
      vs.

WELTMAN WEINBERG & REIS CO., LPA,                 **REPORT AND**
            Defendant.                            **RECOMMENDATION**

## I. Introduction

Plaintiff Joanne Partin was a processing clerk in the legal processing department of

defendant Weltman Weinberg & Reis Co., LPA, a law firm.  As part of an ongoing reduction in

force ("RIF"), defendant eliminated plaintiff's position on January 10, 2014, three days before

she was scheduled to return to work from medical leave for knee replacement surgery.  Plaintiff

claims her termination violated the anti-discrimination laws and brought suit under the Family

and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and Ohio law proscribing

disability discrimination, Ohio Rev. Code §§ 4112.02 and 4112.99.[1]  This matter is before the

Court on defendant's motion for summary judgment (Doc. 25), plaintiff's response in opposition

(Doc. 37), and defendant's reply memorandum (Doc. 41).

## II. Facts

The following facts were taken from the evidence submitted by both parties in connection

with defendant's motion for summary judgment and are undisputed unless otherwise noted.

### A. Parties and Background

Defendant is a law firm with offices in Ohio, Pennsylvania, Illinois, Michigan, and

Florida.  (Affidavit of Juanita Stevens ("Stevens Affidavit"), Doc. 25-2, at ¶ 2).[2]  Plaintiff began

---

[1] Plaintiff's complaint indicates that her claim of disability discrimination is also being brought under the Americans with Disabilities Act of 1990 ("ADA"), *see* Doc. 12 at 3; however, in plaintiff's response in opposition to defendant's motion for summary judgment, she indicates that her "disability discrimination claim is in fact brought solely under Ohio law." (Doc. 37 at 12 n.2).

[2] Ms. Stevens is defendant's director of business efficiency.  (Stevens Affidavit, Doc. 25-2 at ¶ 1).

working for defendant as a clerical specialist in October 2003. (Deposition of Joanne Partin, Doc. 28 at 41-42).[3] At some point during her employment, plaintiff's job position was renamed from "clerical specialist" to "processing clerk." (*See id.* at 44). Plaintiff's position was part of defendant's legal processing department, which "was responsible for preparing and filing court claims and obtaining and executing judgments for the firm's clients." (Stevens Affidavit, Doc. 25-2 at ¶ 3). That department "consisted primarily of Processing Clerks and Copy Clerks." (*Id.* at ¶ 4).

In September and October 2007, plaintiff received approval for medical leave to recover from surgery for plantar fasciitis. (*See* Doc. 28 at 63-64). Plaintiff returned to work without incident. (*Id.*). Plaintiff received FMLA leave from March 7 through March 26, 2012 to recover from another surgery. (*Id.* at 66-67; Response to Employee Request for Leave of Absence dated Mar. 1, 2012, Doc. 29, Exh. H). Plaintiff was reinstated to her position after this leave. (Doc. 28 at 67). Plaintiff also received FMLA leave from September 6 through October 22, 2012 for knee surgery and recovery. (*Id.* at 67-68; Response to Employee Request for Leave of Absence dated Sept. 21, 2012, Doc. 29, Exh. I). Defendant reinstated her to her position at the conclusion of her leave period. (Doc. 28 at 68). Plaintiff also received FMLA leave from March 6, 2013 through April 1, 2013 for neck surgery and recovery. (*Id.* at 69-70; Response to Employee Request for Leave of Absence dated Mar. 8, 2013, Doc. 29, Exh. J). Plaintiff was reinstated to her position without incident at the conclusion of her leave period. (Doc. 28 at 70).

B. The History of Defendant's RIF Prior to Plaintiff's Termination

In late 2012, defendant determined "that business conditions necessitated a reduction in force among its staff across the firm, including the staff in the Legal Processing Department." (Stevens Affidavit, Doc. 25-2 at ¶ 8). Defendant "determined that the volume of business was

---

[3] Page citations for depositions refer to the internal page numbering of the deposition, not the page numbers provided by CM/ECF.

decreasing and that it would be best to centralize as much as possible of the Department's work in the Columbus office, while still maintaining some staff in the other offices." (*Id.* at ¶ 9). Defendant developed guidelines called the "Employee Selection Criteria" to help identify employees to be included in the RIF. (*Id.* at ¶ 6). Specifically, these guidelines indicated that defendant was to consider the following criteria, which were listed from most to least important: (1) work, functionality, and the ability to absorb/move responsibilities to other roles; (2) overall work performance; (3) current write-ups; (4) ability to adapt to change and work on a team; and (5) seniority. (*Id.* at ¶¶ 6-7; Employee Selection Criteria, Doc. 25-2, Exh. 1 at 51).

In January 2013, defendant implemented the first phase of the RIF and determined that it was necessary to eliminate one position from the legal processing department. (Stevens Affidavit, Doc. 25-2 at ¶ 15). In determining which legal processing employee to eliminate in the Cincinnati office during the first RIF phase, management ranked the processing clerks using the criteria set forth in the guidelines. (*Id.* at ¶¶ 12, 15). Management ranked the following Cincinnati processing clerks "in order of job performance and knowledge":

| Ranking | Name | Hire Date |
|---|---|---|
| 1 | Kristy Frazier | 8/22/2011 |
| 2 | Sarah Daley | 9/26/2011 |
| 3 | Artie Lykins-Parker | 6/26/2006 |
| 4 | Krista Sullivan | 4/11/2011 |
| 5 | Joanne Partin | 10/20/2003 |
| 6 | Brittany Seiber | 10/10/2011 |
| 7 | Richie Holwadel | 6/12/2000 |
| 8 | Julia Renner | 8/23/2010 |

(*See* email from Michele DeSalvo[4] on Jan. 11, 2013 at 11:36 a.m., Doc. 25-2, Exh. 1 at 8).

---

[4] Ms. DeSalvo was an employee relations specialist in defendant's Cincinnati office. (Stevens Affidavit, Doc. 25-2 at ¶ 11).

Defendant chose Julia Renner, the processing clerk with the lowest ranking, for elimination. (*See id.*; Stevens Affidavit, Doc. 25-2 at ¶ 15-16). In selecting Ms. Renner for termination, management provided written comments concerning Ms. Renner on each of the five selection criteria under the guidelines. (*See* email from Ms. DeSalvo on Jan. 11, 2013 at 11:36 a.m., Doc. 25-2, Exh. 1 at 8-9). Defendant terminated Ms. Renner as part of the RIF on January 17, 2013. (Stevens Affidavit, Doc. 25-2 at ¶ 16). Ms. Renner had not taken any FMLA leave during her term of employment with defendant. (*Id.*; Defendant's Responses to Plaintiff's First Set of Interrogatories, Doc. 37-3 at 6-7).

In March 2013, defendant selected Ms. Seiber for elimination during the second phase of the RIF. (Stevens Affidavit, Doc. 25-2 at ¶ 17). Defendant indicated that since the first phase of the RIF, Mr. Holwadel's performance had sufficiently improved such that Ms. Seiber was ranked below him. (*See id.* at ¶ 18). Defendant terminated Ms. Seiber as part of the RIF on March 14, 2013. (*Id.* at ¶ 17). Ms. Seiber had not taken any FMLA leave during her term of employment with defendant. (*Id.*; Defendant's Responses to Plaintiff's First Set of Interrogatories, Doc. 37-3 at 6-7).

The next phase of the RIF was planned for August 2013. (Stevens Affidavit, Doc. 25-2 at ¶ 19). Plaintiff and Mr. Holwadel were selected for elimination in the Cincinnati office. (*Id.* at ¶ 20; *see also* email from Ms. Stevens on Aug. 7, 2013 at 11:45 a.m., Doc. 25-2, Exh. 1 at 35-36). Both had taken FMLA leave. (Defendant's Responses to Plaintiff's First Set of Interrogatories, Doc. 37-3 at 6). However, prior to implementation of the August 2013 RIF, other employees in the legal processing department "left voluntarily to seek other opportunities," which postponed the need for further reductions at that time. (Stevens Affidavit, Doc. 25-2 at ¶ 21; *see also* email from Ms. DeSalvo on Aug. 14, 2013 at 4:06 p.m., Doc. 25-2, Exh. 1 at 44).

C.  Plaintiff's Final FMLA Leave and Termination

On October 23, 2013, defendant approved plaintiff's request for FMLA leave from

October 29 to December 10, 2013 for knee replacement surgery and recovery.  (Doc. 28 at

71-72; Response to Employee Request for Leave of Absence dated Oct. 23, 2013, Doc. 29, Exh.

K).  Defendant later granted plaintiff an extension of her FMLA leave until "January 6, 2014,

which was when her 12-week FMLA leave was set to expire."  (Affidavit of Michele DeSalvo

("DeSalvo Affidavit"), Doc. 25-3 at ¶ 19; Doc. 28 at 72).  While plaintiff was out on FMLA

leave, defendant again selected plaintiff and Mr. Holwadel for elimination as part of the

December 2013 phase of the RIF.  (Stevens Affidavit, Doc. 25-2 at ¶¶ 22-23; email from Ms.

Stevens on Dec. 11, 2013 at 12:32 p.m., Doc. 25-2, Exh. 1 at 42).  Ms. Stevens indicated in an

email that she would send her supervisor "the write up as to why [plaintiff and Mr. Holwadel]

were selected," but such a document does not exist in the record.  (See email from Ms. Stevens

on Dec. 11, 2013 at 12:32 p.m., Doc. 25-2, Exh. 1 at 42).  Defendant eliminated 60 employees as

part of the December 2013 phase of the RIF.  (DeSalvo Affidavit, Doc. 25-3 at ¶ 16).  All of the

impacted employees were notified of the elimination of their positions on December 18, 2013,

except for plaintiff, who was out on FMLA leave.  (Id. at ¶¶ 17, 19).  Ms. DeSalvo offered the

following explanation for why defendant did not notify plaintiff of the elimination of her position

at that time:

> The reason why [defendant] did not notify [plaintiff] of the reduction or
> the elimination of her position on December 18, 2013 was that [defendant]
> decided to wait to see whether circumstances would change between December
> 18 and [plaintiff's] expected date of return several weeks later.  In particular, if
> another employee left the department, or if conditions otherwise changed
> sufficiently in the interim, it was possible that [plaintiff's] position could avoid
> elimination.

(Id. at ¶ 20; see also Deposition of Michele DeSalvo, Doc. 34 at 16-17, 34-35).

On January 7, 2014, plaintiff's physician faxed Ms. DeSalvo a medical certification that

plaintiff would need to extend her medical leave until February 6, 2014. (*See* Doc. 28 at 75-76;

Certification of Health Care Provider for Employee's Serious Health Condition dated Jan. 6,

2014, Doc. 29, Exh. K at 83-86). Ms. DeSalvo mailed plaintiff the following response:

> You called and left a voice mail message for me this morning, and I received a
> fax this afternoon requesting an extension for your leave of absence until
> February 3, 2014, as your original return to work date was January 6, 2014. This
> request for the extension has been approved even though you have exhausted all
> of your [FMLA] entitlement. I am also required to inform you that the Firm may
> not be able to hold your position open for you during this time.

(Letter from Ms. DeSalvo to plaintiff dated Jan. 7, 2014, Doc. 29, Exh. M at 88; *see also* Doc. 28

at 76-79; Doc. 34 at 35). When plaintiff received this letter, she called Ms. DeSalvo. (*See* Doc.

28 at 80; Doc. 34 at 35). Plaintiff testified that she asked Ms. DeSalvo if she would still have a

job if she could return to work on Monday, January 13, 2014. (*See* Doc. 28 at 79-81). Plaintiff

testified that Ms. DeSalvo told her she would still have a job if she was able to return on that

date. (*See id.* at 80-81). Ms. DeSalvo testified that plaintiff did ask her that question, but she

"never said yes. [She] never answered that question because [she] knew [she] couldn't." (Doc.

34 at 38-39).

Plaintiff testified that after speaking with Ms. DeSalvo, she called her physician and

asked to be released to return to work on January 13, 2014. (Doc. 28 at 81). Plaintiff's

physician provided a medical certification that plaintiff could return to her regular work schedule

on January 13, 2014, but that she must be able to use a walker. (Certification of Health Care

Provider for Employee's Serious Health Condition dated Jan. 9, 2014, Doc. 29, Exh. N at 90).

Plaintiff testified that she needed the walker for stability and therapy at that time. (Doc. 28 at 7).

Plaintiff attests:

> I have significant limitations on my ability to walk. For several months after my
> total knee replacement I had to use a walker to maintain stability while walking. I

6

> sometimes walk with a limp, and occasionally use a cane when I go outside my
> house. I walk noticeably slower than the average person, and am extremely slow
> when walking up and down stairs. I cannot run or walk rapidly for more than a
> very short distance.

(Declaration of Joanne Partin, Doc. 37-1 at ¶ 6).

After receiving the January 9 medical certification releasing plaintiff to return to work on

January 13, 2014, defendant determined that "conditions had not changed, no other employees

had left the department, and [plaintiff's] position was still being eliminated a[s] part of the

reduction that impacted other employees." (DeSalvo Affidavit, Doc. 25-3 at ¶ 25). Ms. DeSalvo

and Nick Rohner, managing attorney for defendant's Cincinnati office, called plaintiff on the

morning of January 10, 2014 to inform her that her position had been eliminated. (*Id.*; Doc. 28 at

85; Doc. 34 at 39-40).

Saundra Duncan, who was senior manager for legal processing support at the time of

plaintiff's termination, participated in the decision to include plaintiff and Mr. Holwadel in the

RIF. (Deposition of Saundra Duncan, Doc. 35 at 7-8, 16-17). Ms. Duncan provided the

following testimony concerning the process leading to that decision:

> Q. Why was [Mr.] Holwadel included in the December '13 RIF?
> A. He met the criteria. It was based on the criteria supplied by HR as far
> as the ranking of the employees.
> Q. What criteria in particular led you to include [Mr.] Holwadel? Why
> [Mr.] Holwadel instead of [Ms.] Denny, for instance?
> A. Well, the criteria was first the job functionality, the work performance,
> any type of coaching and corrective action.
> Q. I'm not asking you for a list of the criteria but why you interpreted
> [Mr.] Holwadel as being the right person to let go under those criteria.
> A. Based on the work performance.
> Q. Work performance?
> . . .
> A. Yes.
> Q. Would the same be true as to why [plaintiff] was selected?
> A. Are you asking me the same question? Yes, based on the criteria
> provided to us based on her work performance.
> . . .

> Q. Did you make what you would consider to be a recommendation to [Ms. Stevens] about who you thought should be let go in that RIF?
>
> A. It was agreed upon, yes.
>
> Q. That's not my question. Did you recommend [plaintiff] and [Mr. Holwadel] for inclusion in the RIF?
>
> A. Did I recommend? Yes.
>
> . . .
>
> Q. And the reason that you recommended [plaintiff] and [Mr. Holwadel] was because you believed them to be the lowest performers in that Cincinnati office?
>
> A. I believed them to fit the criteria presented to me by HR.
>
> Q. And specific—well, I'm asking a more specific question that that. Earlier you said that those people were selected because they were the lowest performers. Is that why you recommended them?
>
> A. Part of the criteria that was evaluated that selected the person, the position to be reduced or, in workforce was based on work performance. That was one of the five pieces of criteria.
>
> Q. Well, that was the only criteria you mentioned to me a few minutes ago describing why these people were let go.
>
> A. That's incorrect. I gave you five pieces of criteria.
>
> Q. And when I asked why specifically these people were let go, you said it was because they were the lowest performers, correct?
>
> A. That was one piece of it.
>
> Q. That was the only piece you mentioned when you were asked this question a few minutes ago. Do you want to give a different answer now?
>
> A. They met the criteria, the five pieces of information produced.
>
> Q. They met all five criteria. [Mr. Holwadel] and [plaintiff], they met all five criteria. Is that your testimony?
>
> A. They met the majority of the five.

(*Id.* at 18-22).

Defendant continued the RIF after plaintiff's termination. (DeSalvo Affidavit, Doc. 25-3 at ¶ 29). Since the RIF began, defendant has eliminated 33% of its total workforce. (*Id.*). Defendant has retained members of the legal processing department who have previously taken FMLA leave. (*Id.* at ¶ 30). Defendant did not replace plaintiff or the other employees included in the RIF after their separations. (Stevens Affidavit, Doc. 25-2 at ¶ 25). "Instead, those positions were eliminated and the tasks they had been performing were performed by existing employees in the Legal Processing Department who were already performing related work." (*Id.*).

8

### III. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield,* 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the non-moving party to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original). To meet that burden, the non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Id.* at 586. If, after an appropriate time for discovery, the

opposing party is unable to demonstrate a prima facie case, summary judgment is warranted.

*Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue

for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. Resolution

### A. FMLA

Defendant argues that plaintiff cannot maintain an FMLA interference claim because "it

is undisputed that [defendant] provided [p]laintiff with all of the leave that she requested and was

entitled to under the FMLA" and because "[defendant] waited until she returned from leave to

terminate her." (Doc. 25-1 at 12).[5] Defendant contends that plaintiff cannot establish a prima

facie case of FMLA retaliation because she cannot show a causal link between her FMLA leave

and her inclusion in the RIF. (*Id.* at 13). Defendant asserts that the record shows that the RIF

"included numerous other employees who had not used FMLA leave." (*Id.*). Defendant

contends that plaintiff's position was chosen for elimination as part of the RIF using objective

criteria and that her position would still have been eliminated even if she had not taken FMLA

leave. (*Id.* at 14). Further, defendant argues that plaintiff cannot show that defendant's

legitimate, non-retaliatory reason for her termination—inclusion in the RIF—is pretextual. (*Id.*

at 14-17). Defendant contends that, standing alone, the temporal proximity between plaintiff's

FMLA leave and her termination is insufficient to support a finding of pretext. (*Id.* at 17).

Plaintiff responds that the temporal proximity between her use of FMLA leave and her

discharge is sufficient to show a causal connection for purposes of establishing a prima facie

case. (Doc. 37 at 9-10). Plaintiff argues that the following facts are evidence of pretext: (1) the

---

[5] Page citations for this document refer to the page numbers provided by CM/ECF.

only processing clerks from the Cincinnati office included in the December 2013 RIF were also the only two processing clerks who had used FMLA leave; (2) three of the five employees in Ohio from the legal processing department chosen for the December 2013 RIF had either just used or were about to use FMLA leave; (3) defendant did not select employees for elimination based on their performance levels because "Mr. Holwadel's performance rating was significantly higher than at least one other Processing Clerk who was retained"; (4) plaintiff was more experienced than two processing clerks who were retained; and (5) defendant has failed to produce a written statement of reasons why it chose plaintiff and Mr. Holwadel for inclusion in the December 2013 RIF. (*Id.* at 11-12).

In reply, defendant argues that plaintiff improperly focuses only on the December 2013 reductions in the Cincinnati office and ignores the earlier phases of the RIF throughout 2013 across defendant's multiple offices. (Doc. 41 at 3). Defendant contends that plaintiff's seniority as compared to two retained employees is not a material fact because seniority was ranked the lowest in importance in the RIF guidelines. (*Id.* at 3-4). Defendant argues that the existence or lack thereof of the alleged written statement of reasons for plaintiff's termination does not create a material factual issue because plaintiff's termination was part of an ongoing, well-documented RIF. (*Id.* at 4). Defendant contends that plaintiff has failed to make any arguments to demonstrate that she can maintain an FMLA interference claim. (*Id.* at 5). Defendant argues that plaintiff cannot show a causal connection for purposes of establishing a prima facie case because the decision to include her in the RIF was made long before her request for or use of FMLA leave and temporal proximity alone is insufficient to show a causal connection. (*Id.* at 5-6). Further, defendant contends that plaintiff has failed to demonstrate pretext because the record shows that plaintiff was selected for the RIF based on a number of factors, not just performance. (*Id.* at 6-7).

### 1. FMLA Interference

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Upon returning from FMLA leave, an employee must be reinstated to her position or an equivalent position in terms of pay, benefits, and other conditions of employment. 29 U.S.C. § 2614(a)(1). The FMLA makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. § 2615(a)(1).

The "entitlement" or "interference" theory of liability is derived from the FMLA's creation of these substantive rights. *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). "If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred." *Id.* (citing *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999)). However, the substantive right to reinstatement "shall [not] be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). "[A]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request." *Arban*, 345 F.3d at 401 (alteration in original) (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)). "An employee lawfully may be dismissed, preventing [her] from exercising [her] statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Id.* (citing *Gunnell*, 152 F.3d at 1262).

Here, to the extent plaintiff seeks to establish defendant's FMLA liability under an interference theory, the undersigned finds that summary judgment should be granted in favor of defendant. It is undisputed that plaintiff received the "total of 12 workweeks of leave during any 12-month period" to which she was entitled under the FMLA. 29 U.S.C. § 2612(a)(1)(D). Defendant granted her leave from March 6, until April 1, 2013 and from October 29, 2013 until January 6, 2014. (*See* Doc. 25-3 at ¶ 19; Doc. 28 at 69-72; Response to Employee Request for Leave of Absence dated Mar. 8, 2013, Doc. 29, Exh. J; Response to Employee Request for Leave of Absence dated Oct. 23, 2013, Doc. 29, Exh. K). Thus, plaintiff was granted and received the 12 weeks of leave to which she was entitled. *See* 29 U.S.C. § 2612(a)(1)(D). Plaintiff does not point to any evidence showing that defendant denied her FMLA benefits or somehow interfered with her right to FMLA leave. Accordingly, defendant's motion for summary judgment should be granted on plaintiff's FMLA interference claim because defendant did not deny her any of the substantive benefits to which she was entitled under the FMLA.

### 2. *FMLA Retaliation*

The "retaliation" or "discrimination" theory of liability under the FMLA arises under § 2615(a)(2), which prohibits an employer from discharging or discriminating against an employee for "opposing any practice made unlawful by" the Act. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (citing *Arban*, 345 F.3d at 400-01). An employer is prohibited from discriminating against an employee who has used FMLA leave and cannot use the taking of FMLA leave as a negative factor in employment actions. *Arban*, 345 F.3d at 403 (citing 29 C.F.R. § 825.220(c)). This prohibition extends to retaliatory discharge of an employee for taking FMLA leave. *Id*. (citing *Skrjanc v. Great Lakes Power Serv. Co*., 272 F.3d 309, 314 (6th Cir. 2001)).

13

Absent direct evidence of unlawful conduct, FMLA retaliation claims are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bryson*, 498 F.3d at 570. "[A] plaintiff may make out a prima facie case . . . by showing that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Id.* (citing *Skrjanc*, 272 F.3d at 314). "If the plaintiff satisfies her prima facie showing, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Id.* "If the defendant succeeds, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." *Id.*

In establishing a prima facie case, "the close temporal proximity between [FMLA] leave and termination provides the necessary causal connection at this early stage of the analysis where the burden of proof is minimal." *Roll v. Bowling Green Metalforming, LLC*, 457 F. App'x 458, 460 (6th Cir. 2012). *See also DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."). However, "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc*, 272 F.3d at 317 (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1397-98 (10th Cir. 1997)).

When positions are eliminated due to budget cuts, a defendant's inclusion of employees who have not taken FMLA leave is evidence that the defendant's selections for elimination were not pretextual. *See Stewart v. DaVita*, No. 3:14-cv-00110, 2015 WL 4041986, at *9 (M.D. Tenn.

Jul. 1, 2015) (citing *Skrjanc*, 272 F.3d at 317). *See also Smith v. City of Niles*, 505 F. App'x 482, 487-88 (6th Cir. 2012) (affirming district court's finding that plaintiff's inclusion in RIF was not pretextual when defendant also eliminated an employee who had not taken any FMLA leave).

Here, the undersigned finds that plaintiff has established a prima facie case of FMLA retaliation. The parties dispute only whether plaintiff can show a causal connection between her use of FMLA leave and her termination. The undersigned concludes that the termination of plaintiff the day after she informed defendant of her intention to return from medical leave "provides the necessary causal connection at this early stage of the analysis where the burden of proof is minimal." *Roll*, 457 F. App'x at 460. *See also DiCarlo*, 358 F.3d at 421. However, defendant has produced evidence that plaintiff was terminated as part of a firm-wide RIF, which constitutes a legitimate, non-discriminatory reason for the elimination of plaintiff's position. *See Roll*, 457 F. App'x at 460 (holding that a company's RIF constituted a nondiscriminatory reason for plaintiff's termination). Therefore, the only issue remaining is whether there is a genuine dispute of fact as to whether defendant's articulated reason is a pretext for discrimination.

At the pretext stage, plaintiff has the burden to produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). She can accomplish this by proving "'(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her discharge], or (3) that they were *insufficient* to motivate discharge.'" *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (emphasis in original) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds, Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)). The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, i.e., the reason is factually false. *Manzer*, 29 F.3d at 1084. The third showing ordinarily consists of

evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. *Id.* If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id.* For the second showing, the plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. *Id.*

The Sixth Circuit has cautioned that *Manzer*'s three-part test is not to be applied in a formalistic manner. *See Chen*, 580 F.3d at 400 n.4. Rather, the Court must bear in mind that "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* The Court must ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation and, if so, how strong the evidence is. *Id.* The Sixth Circuit in *Chen* explained:

> At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

*Id.*

In attempting to show pretext, plaintiff argues she and Mr. Holwadel were both the only employees selected for termination in the legal processing department of defendant's Cincinnati office and the only employees from that department and office who had taken FMLA leave. (Doc. 37 at 11). She also alleges that of the five legal processing employees selected for

termination in the legal processing department from Ohio offices in December 2013, three had either just used FMLA leave or were about to use it. (*Id.*). However, defendant's RIF was not limited to Cincinnati or Ohio, but was firm-wide over five states and included reductions in the legal processing department in three different offices in Ohio. Moreover, the RIF was not limited to December 2013, but included earlier reductions in January, March, and August 2013. When viewed in the context of a firm-wide RIF which occurred over the period of one year, plaintiff's evidence fails to cast doubt on defendant's stated reason for her termination.

Additionally, during the course of the RIF, defendant eliminated the positions of two employees from the legal processing department who had never taken FMLA leave before terminating the positions of plaintiff and Mr. Holwadel who had. Defendant produced evidence that it developed guidelines to rank employees in determining who to include in the RIF. (Stevens Affidavit, Doc. 25-2 at ¶¶ 6-7; Employee Selection Criteria, Doc. 25-2, Exh. 1 at 51). As the RIF began in January 2013, defendant ranked the processing clerks using the criteria set forth in the guidelines. (Stevens Affidavit, Doc. 25-2 at ¶¶ 12, 15). Based on that ranking, defendant first terminated Ms. Renner, who had never taken FMLA leave, in the January 2013 phase of the RIF. (*See id.* at ¶ 16; email from Ms. DeSalvo on Jan. 11, 2013 at 11:36 a.m., Doc. 25-2, Exh. 1 at 8; Defendant's Responses to Plaintiff's First Set of Interrogatories, Doc. 37-3 at 6-7). In the March 2013 phase of the RIF, defendant next terminated Ms. Seiber, who had also never taken FMLA leave. (Stevens Affidavit, Doc. 25-2 at ¶ 17; Defendant's Responses to Plaintiff's First Set of Interrogatories, Doc. 37-3 at 6-7). Defendant's inclusion of employees who had not taken FMLA leave in the RIF is evidence that the RIF was not a pretext to terminate plaintiff for taking FMLA leave. *See Stewart*, 2015 WL 4041986, at *9; *Smith*, 505 F. App'x at 487-88. Moreover, defendant initially selected plaintiff for elimination as part of the RIF in August 2013, but postponed that round of reductions because other employees in the legal

17

processing department left voluntarily. (Stevens Affidavit, Doc. 25-2 at ¶¶ 19-21; email from Ms. DeSalvo on Aug. 14, 2013 at 4:06 p.m., Doc. 25-2, Exh. 1 at 44). Because defendant initially selected plaintiff for elimination months before plaintiff requested FMLA leave for her knee replacement surgery and recovery, the RIF could not have been a pretext to terminate plaintiff for taking this FMLA leave. *See* 29 U.S.C. § 2614(a)(3)(B); *Arban*, 345 F.3d at 401. Thus, plaintiff's evidence concerning the FMLA status of the processing clerks eliminated from the Cincinnati office in December 2013 does not create a genuine issue of material fact as to whether defendant's proffered reason is a pretext for discrimination.

Plaintiff further contends that a jury could find evidence of pretext from Ms. Duncan's testimony that plaintiff and Mr. Holwadel were selected for elimination based on their performance levels even though "Mr. Holwadel's performance rating was significantly <u>higher</u> than at least one other Processing Clerk who was retained." (Doc. 37 at 11) (emphasis in original). She also argues that given her decade of experience as a processing clerk, defendant's retention of two relatively new employees is further evidence of pretext. (*Id.*).

Plaintiff's evidence concerning performance levels does not establish a genuine issue of fact on pretext because defendant did not select employees for elimination based *solely* on performance. Instead, the undisputed evidence shows that defendant developed five criteria on which to rank employees for the RIF: (1) work, functionality, and the ability to absorb/move responsibilities to other roles; (2) overall work performance; (3) current write-ups; (4) ability to adapt to change and work on a team; and (5) seniority. (Stevens Affidavit, Doc. 25-2 at ¶¶ 6-7; Employee Selection Criteria, Doc. 25-2, Exh. 1 at 51). Performance was only one of the five criteria and, contrary to plaintiff's argument, Ms. Duncan's testimony is not to the contrary. While Ms. Duncan testified that plaintiff and Mr. Holwadel were selected for inclusion in the RIF based on work performance, she also testified that "[t]hey met the criteria, the five pieces of

18

information produced" and that "[t]hey met the majority of the five [criteria]." (*See* Doc. 35 at 18-22). Similarly, defendant's selection of plaintiff for the RIF despite her seniority does not establish an issue of fact on pretext as seniority was the least important criterion under defendant's RIF guidelines. (*See* Stevens Affidavit, Doc. 25-2 at ¶¶ 6-7; Employee Selection Criteria, Doc. 25-2, Exh. 1 at 51).

Finally, plaintiff contends that defendant's failure to produce the written statement referenced in Ms. Stevens's December 11, 2013 email of the reasons why plaintiff was chosen for elimination establishes pretext because a reasonable trier of fact could find that defendant has purposefully withheld this evidence. (Doc. 37 at 11). However, the fact that defendant did not produce a written statement of the reasons why it chose plaintiff for elimination in the RIF does not establish that defendant used the RIF as a pretext for discrimination. As explained above, defendant created objective criteria for selecting employees for inclusion in the RIF. Over the course of the RIF, which included reductions in January, March, August, and December 2013, defendant eliminated 33% of its total workforce. (Stevens Affidavit, Doc. 25-2 at ¶ 22; DeSalvo Affidavit, Doc. 25-3 at ¶ 29). As to the processing clerks in the Cincinnati office, defendant eliminated Ms. Renner and Ms. Seiber, who had not taken FMLA leave, before eliminating plaintiff and Mr. Holwadel, who had taken FMLA leave. In addition, defendant retained members of the legal processing department who had previously taken FMLA leave. (DeSalvo Affidavit, Doc. 25-3 at ¶ 30). Even in the absence of a contemporaneous written statement of reasons explaining defendant's selection of plaintiff for inclusion in the RIF, given the evidence that defendant terminated employees who had not taken FMLA leave and retained employees who had taken FMLA leave, no reasonable jury could find that defendant conducted the RIF as a pretext to eliminate employees like plaintiff who had taken FMLA leave. Accordingly,

defendant's motion for summary judgment should be granted on plaintiff's FMLA retaliation claim.

      B. <u>Ohio Rev. Code §§ 4112.02 and 4112.99</u>

Defendant argues that plaintiff cannot establish a prima facie case of disability discrimination because she cannot show that she was disabled or that she was terminated because she was disabled. (Doc. 25-1 at 18-20). Further, defendant contends that plaintiff cannot establish that the RIF was a pretext for disability discrimination as none of the employees included in the RIF had a known disability. (*Id.* at 20).

Plaintiff responds that on January 8, 2014, defendant told plaintiff she still had her job, but then changed its mind and terminated her employment after learning she would need to use a walker upon her return to work. (Doc. 37 at 12). Plaintiff argues that the requirement that she use a walker, along with significant restrictions in the "condition, manner, or duration" under which she is able to walk, raises a genuine issue of material fact as to whether she is disabled. (*Id.* at 13-14). Plaintiff contends that even if she was not in fact disabled, she can establish a claim on the theory that defendant "regarded her" as disabled when it learned she would need to use a walker. (*Id.* at 14).

In reply, defendant argues that plaintiff failed to provide any evidence that defendant terminated her based on a perception that she was disabled. (Doc. 41 at 10). Defendant contends that plaintiff has failed to demonstrate the RIF was a pretext for disability discrimination. (*Id.* at 11).

In disability discrimination cases, Ohio courts look to federal regulations and cases interpreting the ADA for guidance in interpreting Ohio law. *See, e.g.*, *Knapp v. City of Columbus*, 192 F. App'x 323, 328 (6th Cir. 2006); *Spencer v. Nat'l City Bank*, 732 F. Supp.2d

778, 787 (S.D. Ohio 2010); *City of Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio 1998). The ADA, 42 U.S.C. § 12101 *et seq.*, and Ohio Rev. Code § 4112.02(A) prohibit an employer from discharging any individual on the basis of disability. Because the alleged discriminatory acts in this case occurred after January 1, 2009, the ADAAA applies. *Milholland v. Sumner Cty. Bd. of Educ.*, 569 F.3d 562, 566-67 (6th Cir. 2009). In order to establish a claim for disability discrimination, a plaintiff must first establish that she is "disabled" within the meaning of the Act. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997).

Under the ADAAA, "disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. . . ." 42 U.S.C. § 12102(1). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12101(2)(A). An impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

In the absence of direct evidence of discrimination on the basis of disability, a plaintiff may prove discrimination using the burden-shifting analysis set forth in *McDonnell Douglas*. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). If the plaintiff states a prima facie case of disability discrimination, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse action. *Id.* Once the defendant proffers such a reason, the burden shifts back to the plaintiff to show that it is a pretext for discrimination. *Id.*

To make a prima facie case of disability discrimination, a plaintiff must show that (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the position, with

or without reasonable accommodation; (3) she suffered an adverse employment action because of her disability; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). In the RIF context, a plaintiff "must meet a heightened standard to establish a prima facie case." *Geiger*, 579 F.3d at 623-24 (citing *Asmo v. Keane, Inc.*, 471 F.3d 588, 592-93 (6th Cir. 2006)). To meet this heightened standard, "the plaintiff must provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Id.* at 624 (citation omitted). "[T]he evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of [her disability]." *Id.* (quoting *Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 767-68 (6th Cir. 2004)).

Here, plaintiff has not established a prima facie case of disability discrimination. It is undisputed that defendant neither replaced plaintiff nor held her position open after her separation. (Stevens Affidavit, Doc. 25-2 at ¶ 25); *Whitfield*, 639 F.3d at 259. As such, plaintiff has not established the fifth element of her prima facie case.

Further, plaintiff has not met the heightened standard for establishing a prima facie case in the RIF context because she has not provided additional evidence "tending to indicate that [defendant] singled out the plaintiff for discharge for impermissible reasons." *Geiger*, 579 F.3d at 624. Plaintiff argues that defendant initially told her on January 8, 2014 that she would still have her job if her doctor released her to return to work, but that defendant "changed its mind and terminated her on January 10th, after finding out that she would have to use a walker in the office upon her return." (Doc. 37 at 12). However, the undisputed evidence shows that defendant initially selected plaintiff's position for elimination in August 2013 and reaffirmed that

22

selection in December 2013.  (Stevens Affidavit, Doc. 25-2 at ¶¶ 20, 22-23; email from Ms. Stevens on Aug. 7, 2013 at 11:45 a.m., Doc. 25-2, Exh. 1 at 35-36; email from Ms. Stevens on Dec. 11, 2013 at 12:32 p.m., Doc. 25-2, Exh. 1 at 42).  Thus, even accepting that defendant told plaintiff she would still have her job on January 8, 2014, which defendant disputes, that evidence is not sufficiently probative to allow a factfinder to believe that [defendant] intentionally discriminated against . . . plaintiff because of [her disability]." *Geiger*, 579 F.3d at 624.

Further, for the reasons discussed above in the analysis of plaintiff's FMLA retaliation claim, even if plaintiff were able to establish a prima facie case of disability discrimination, she has not provided evidence from which a reasonable jury could conclude that defendant used the RIF as a pretext to discriminate against her on the basis of disability.  Thus, even if the Court were to assume that plaintiff was disabled, she also cannot satisfy her burden at the pretext stage for her disability claim, and summary judgment is appropriate.

Accordingly, defendant's motion for summary judgment should be granted on plaintiff's disability discrimination claim.

**V.  Conclusion**

Based on the foregoing, it is **RECOMMENDED** that defendant's motion for summary judgment (Doc. 25) be **GRANTED**.

Date: ___1/5/16___

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOANNE PARTIN,                                    Case No: 1:14-cv-216
    Plaintiff,                          Dlott, J.
                                                  Litkovitz, M.J.

    vs.

WELTMAN WEINBERG & REIS CO., LPA,
    Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).